1
2
3
4
5
6       # UNITED STATES DISTRICT COURT
7            ## EASTERN DISTRICT OF CALIFORNIA
8
9
10
11  SOTO ERNESTO,                          )   1:12cv00477 DLB PC
                                           )
12              Plaintiff,                 )   ORDER DISMISSING SECOND
                                           )   AMENDED COMPLAINT WITH
13      vs.                                )   LEAVE TO AMEND
                                           )
14  MATTHEW CATE, et al.,                  )
                                           )   THIRTY-DAY DEADLINE
15              Defendants.                )
                                           )
16  _____

17          Plaintiff Soto Ernesto ("Plaintiff"), a state prisoner proceeding pro se, filed this civil

18  rights complaint on March 29, 2012.  On February 27, 2013, the Court dismissed the complaint

19  with leave to amend.  Plaintiff filed a First Amended Complaint ("FAC") on April 22, 2013.

20          The Court screened Plaintiff's FAC and dismissed it with leave to amend on November

21  13, 2013.  Plaintiff filed his Second Amended Complaint ("SAC") on March 6, 2014.  Plaintiff

22  names Matthew Cate, Warden Connie Gipson, Dr. J. Moon, R.N. M. Ceballos, Dr. J. Kim, Dr.

23  M. Loadholt, Dr. Edgar Clark, R.N. P. Rouch, Teresa Macias and L. Zamora as Defendants.

24          Plaintiff paid the filing fee and is not proceeding in forma pauperis.[1]

25
26
27
28  _____
    [1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on April 17, 2012.
                                            1

**A.**    **LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

**B.**    **PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated in High Desert State Prison in Susanville, California. The events at issue occurred while Plaintiff was housed at Corcoran State Prison in Corcoran, California.

Plaintiff alleges that he has a history of sciatic nerve damage and pain caused by gunshots prior to his incarceration.  In the beginning of September 2007, Plaintiff experienced an intense, sharp pain at the back-side of his right knee.  The pain went to his lower-back and shot through his right testicle and rectal area.

*Defendant Loadholt*

Plaintiff was evaluated by Defendant Loadholt in September 2007.  Plaintiff told that Defendant Loadholt that he had a history of sciatic nerve pain and was experiencing sharp pain and having trouble urinating.  Defendant Loadholt conducted a prostate exam and concluded that Plaintiff had a mildly enlarged prostate.  She prescribed Terazosin.

On November 4, 2007, Plaintiff returned to Dr. Loadholt and complained that the medication was not working to ease the pain and caused several adverse side effects, including

an inability to close his eyes and sleep, a painful erection that would not go away, excruciating pain in his right abdomen and an inability to urinate. Defendant Loadholt responded, "Oh, you want more pills? You want more pills? We'll give you more pills!" ECF No. 28, at 6. Defendant Loadholt prescribed Oxybutynin and continued the Terazosin.

Plaintiff returned to Defendant Loadholt on November 29, 2007. He complained that the original symptoms and the side effects of Terazosin had become worse since she prescribed the two medications. Defendant Loadholt continued to prescribe both medications. Plaintiff contends that this was medically unacceptable because the Oxybutynin dose exceeded the maximum daily dose, and because it is unacceptable under any circumstances to prescribe both medications together.

*Defendant Kim*

Plaintiff saw Defendant Kim on November 26, 2007, and explained his history and current problems. Defendant Kim conducted a rectal examination and continued to prescribe both Terazoxin and Oxybutynin. Plaintiff told Defendant Kim of the problems he was having with the medications, but Defendant Kim advised Plaintiff to continue taking them. Plaintiff contends that this was a medically unacceptable course of treatment for the reasons noted above.

*Defendant Moon*

On or about February 20, 2008, Plaintiff saw Defendant Moon and explained that his urination problem was getting worse, he needed different pain medication, he was in excruciating pain and that his medications were causing side effects. Plaintiff contends that his treatment was medically unacceptable for the reasons noted above.

*Defendant Rouch*

On February 9, 2010, Plaintiff submitted a medical grievance in which he complained of improper medical treatment for pain suffered while urinating. On May 27, 2010, Defendant Rouch denied the grievance. Plaintiff contends that in agreeing with the treatment of Defendants

3

Loadholt, Kim and Moon, Defendant Rouch chose a medically unacceptable path of treatment. Alternatively, Plaintiff contends that if Defendant Rouch denied his grievance without reviewing his medical records, the denial was medically unacceptable.

*Defendants Clark and Macias*

Plaintiff alleges that on October 25, 2010, Defendant Clark denied his medical grievance and his request for a different course of treatment (i.e., change in medication and examination by a specialist).  On October 26, 2010, Defendant Macias denied his medical grievance and his request for a different course of treatment.  In the grievance, Plaintiff set forth all of his medical issues and his problems with treatment.  Plaintiff contends that Defendants Clark and Macias, in denying his grievance, acted in a medically unacceptable manner.

*Defendant Zamora*

On March 20, 2011, Defendant Zamora denied Plaintiff's medical grievance at the Director's Level.  Plaintiff explained his problems, but Defendant Zamora acquiesced with the medically unacceptable treatment.

**C.**   **DISCUSSION**

1.   Legal Standard

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

4

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096. The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

    2.    <u>Analysis</u>

        a.    *Defendants Cate, Gipson and Ceballos*

Under section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>accord</u> Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

The Court explained to Plaintiff in the prior screening order that he had to allege facts against each Defendant.  He has failed to correct this deficiency as to Defendants Cate and Gipson.

As to Defendant Ceballos, the Court explained in the prior screening order that Plaintiff did not state a claim against Defendant Ceballos because, at most, Plaintiff's allegations amounted to negligence.  He does not include any facts against Defendant Ceballos in his SAC, though she is included in the list of Defendants.

Accordingly, Plaintiff has failed to state a claim against Defendants Cate, Gipson and Ceballos.

   b. *Defendants Loadholt, Moon and Kim*

In the prior screening order, the Court explained that Plaintiff's allegations against Defendants Loadholt, Moon and Kim amounted to nothing more than a disagreement with treatment.  The Court further explained that a difference of opinion between a physician and the prisoner concerting treatment does not amount to deliberate indifference unless Plaintiff can show "that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow v. McDaniel, 681 F.3d 978, 987-988 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).

Plaintiff has now added allegations that the course of treatment was medically unacceptable under the circumstances.  Plaintiff contends that the dosage of Oxybutynin exceeded the daily maximum dose, and that is it never acceptable to prescribe both Oxybutynin and Terazosin at the same time.  Plaintiff contends that Terazosin causes urination while Oxybutynin "retains" urine.  ECF No. 28, at 7.

Case 1:12-cv-00477-DLB   Document 29   Filed 08/13/14   Page 7 of 9


However, Plaintiff's statement is not based on medical evidence. Rather, his belief that the medications were medically unacceptable is based on his own opinion. Conclusory allegations that the course of treatment was medically unacceptable under the circumstances are not sufficient. This is especially the case where there are no allegations that Defendants intentionally chose their treatment in conscious disregard of an excessive risk to Plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996).

Indeed, Plaintiff doesn't explain *why* any Defendants continued their course of treatment. He simply substitutes his own opinion as to why their treatment was unacceptable. Without facts to demonstrate that Defendants *intentionally* chose unacceptable medical treatment and knew that it was create a serious risk of harm to Plaintiff, he cannot state a claim. Toguchi v. Chung, 391 F.3d 1051, 1058–60 (9th Cir. 2004).

        c.    *Defendants Rouch, Clark, Macias and Zamora*

Defendants Rouch, Clark, Macias and Zamora were involved in adjudicating Plaintiff's appeals.

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. That circumstance has not been presented here.

As he did in his FAC, Plaintiff fails to allege facts that these Defendants knew of a constitutional violation but failed to prevent it. In fact, Plaintiff has not stated a viable claim against any Defendants relating to his medication care. Absent the presentation of facts sufficient to show that an Eighth Amendment violation occurred in the first place, Plaintiff

cannot pursue a claim against those who reviewed the administrative appeal grieving the underlying denial of medical care.

The Court also notes that the medical grievance at issue appears to be related to the *discontinuation* of Plaintiff's pain medication on February 3, 2010. In his grievance, Plaintiff states, "Appellant was prescribed pain medication to help him deal with his pain. However, the medication was discontinued with no warning or apparant [sic] reason." ECF No. 28, at 22. Where the grievance doesn't specifically address Plaintiff's allegations, i.e., that Defendants' treatment with two medications was a medically unacceptable course of treatment, it cannot be said that the reviewing officials were aware of the problem and failed to correct it.

Plaintiff has therefore failed to state a claim against Defendants Rouch, Clark, Macias and Zamora.

**D.     CONCLUSION AND ORDER**

Plaintiff's SAC fails to state a claim upon which relief may be granted under section 1983. The Court will provide Plaintiff with **a final opportunity to file an amended complaint if he can do so in good faith**. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, Forsyth, 114 F.3d at 1474; King, 814 F.2d at 567, and it must be "complete in itself without reference to the prior or

superseded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a complaint form;

2.      Plaintiff's SAC is dismissed, with leave to amend;

3.      Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint; and

4.      <u>If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **August 13, 2014**                    _____ /s/ *Dennis L. Beck*

UNITED STATES MAGISTRATE JUDGE